We're not in that big a rush, so... Okay, Mr. Rodney. Good morning, Your Honor. Opposing counsel, Rory Rodney on behalf of the plaintiff, Ertha Jean Johnson. May it please the court, we're here today to seek an appeal on the basis that we believe the case was dismissed prematurely on the 12th of the 6th. Mr. Rodney, you have a nice, soft voice, and it's very pleasant, but you need to speak a little bit more. I can. Louder, if you can. Thank you, Judge. We believe that the case was dismissed prematurely on the 12th of the 6th motion. There was not enough support for the court's application of the statute of frauds at this juncture in the case. This court, as should the district court, reviewing it de novo, should focus on the actual allegations of the plaintiff's petition, not on the characterization of the petition as an oral contract. The plaintiff's actual allegations are contained in paragraphs 9, 13, 14, 15, and 16, and upon that basis, we believe that there is no support for even the basic contention that this is an oral agreement that was of more than one year duration from the inception. You would have to assume that by looking at the face of this petition. The only thing that the plaintiff says in relation to time was that the plaintiff flew a minimum of 50,000 miles for five years. Other than that, there is no allegation with regard to the relation of time. Now, this case moved relatively quickly. It was removed, I believe, on March 14, 2013, and the motion 12B6 was filed about a week later. The court granted a brief extension to allow us to address those issues. The case had been filed by prior counsel, who was not a member of the court, the federal court in Houston. The true facts of this case go back a long way. It was in 1997 that Continental, the predecessor prior to the merger, made the offer of lifetime status for its better customers, for those who had met the goal of flying 50,000 miles or so. At the time in which they made it, and we made this allegation in our response to the motion to dismiss, after having asked Judge Gilmour twice for the opportunity, at least once at that point, for the opportunity to amend. So we made the allegation in the motion to dismiss that by the time the offer was made in 1997, she only had one year to complete the total miles that they were looking for. And by the end of 1998, she had achieved those miles. And if you look at the petition, the paragraphs of the petition that have been ignored in this case, she states in paragraph 13 that all conditions precedent to the performance of the United Airlines agreement had been satisfied. And the contractual obligations that she had had been fully performed. Now, we attached to, in response to the motion to dismiss, a letter of March the 1st, which is a part of the record from United Airlines, in which she had, in fact, in which they acknowledged that she had, in fact, met the requirement of being a lifetime member, but in which they alleged that this new program was not, in fact, a frequent flyer program, but was, in fact, something different for which she was not eligible. An invitation only. Invitation only. Program. Right. But she pointed to the plain language of the agreement as she understood it, and that was in that letter that she would have the highest level. Now, the highest is the highest. And she didn't think that there was any ambiguity with regard to that at all. Go back just a minute. I don't want to interrupt your train of thought. Of course. You're doing well. But the initial offer, was that, how was that received? Was that by mail, or was it some public advertisement, or what was it? You know, Your Honor, we never had the opportunity for a discovery in the case. But what I think we alleged in the motion to dismiss was that these offers were made publicly, and they were made to their best customers. And in the letter that we cited in the letter, March 1st, they acknowledged, in fact, that they made such an offer and that she had fulfilled that requirement. I hope I'm answering your question. Well, you may be answering it the best you can from the record that we have. I was just trying to determine if the record doesn't show it. The record would not show it, Your Honor. But if we would have the opportunity to amend, which we asked for twice, we would be able to make the allegation. Now, it's interesting that Your Honor would ask that question, because in other cases involving frequent fire disputes, I think we pointed out the Lagon case out of, I believe, Illinois. The Airlines United itself was quick to point out what the terms of the agreement for the frequent fire points were, at least at the time of that case in 2013. Now, how discovery would have helped us and how the allegations should have made clear to the district court that there was more to learn about this case was that we don't know what the contract was in 1997 and 1998 and what the terms of that agreement were. We didn't have that information. We wanted to have that information. We requested the opportunity to amend it. But even without that, as I hear you, correct me if I'm wrong, you're saying that the March 1st letter confirms the existence of the agreement anyway or the offer. I think so. And so it's very close to the Supreme Court's decision in the Nitsche case where it said that any evidence of the possible existence of a contract should preclude the application of the statute of frauds. Now, we know from some of the other cases that these matters are highly regulated, highly detailed, and we suspected that we would have an opportunity to obtain a discovery that would show that this was, in fact, reduced to writing and, in fact, that she did satisfy the plain language of the agreement in which she alleges in the contract. So it's an interesting thing that it was almost ten years later, in 2010, that the issue came to a boil. For ten years, Ms. Johnson walked around with a card that said lifetime member. For ten years. But then after the merger, they decided to do something else and sort of uninvited her. It's my position that the statute of frauds doesn't apply because your client had already performed. That's correct. Not only that, Judge Elrod, but that the letter shows that it was ratified. And not only that, that there's no real statement. The burden is upon them to initially establish the existence of the statute of fraud. They have to show that there's an adequate allegation of timing that would support their position. And what happened in this case is that they did not exhaust all of the possibilities of her ability to assert a claim. And that's important because the review of the petition is supposed to take place in a view most favorable to the plaintiff. If I might give an example. Is it so hard for this court to believe that a person offered a lifetime benefit of the highest status in having achieved, as she alleged, 50,000 miles a year for four years, even if you assume that he had to do it for five years, that she had already, by 1997, at the time that the offer was made, had already achieved 80% of the requirement that that person would not take trips and segments and to do things simply to obtain that lifetime benefit? I don't think that's a stretch. And it's certainly not a greater stretch to assume that than it is to assume that she was doing it for other reasons. And so I believe that on the face of the petition, there was no way for the defendants to be able to establish that this was, in fact, Judge King, a one-year contract. You cannot look at that contract and say that. Now, maybe later on in the Lagan case, we may face stiff opposition in the form of other motions. I get that, but not at this particular junction. So the other thing that I think is, and I relied upon and we relied upon in our brief the EPCO decision by you, Judge Smith, and I believe that in that case, they said that unless the plaintiff specifically says that it's an oral contract on the face of the petition, then it cannot be the basis for a statute of frauds application and therefore be dismissed on 12B6. Now, the prior lawyer got pretty close to the line, but they did not say oral contract. They said implied contract. United has taken that term to make it the equivalent of oral contract. But I think that, again, requires an assumption of facts unfavorable to the plaintiff. An implied contract. Got the card? Yes. She's still flying? As far as I know. But she doesn't get all of the other benefits that go along with this global tier that they have now. So the question that you posed is simply, does what she did entitle her to global whatever that is? My question that I pose is that the highest is the highest. And we should have had the opportunity to show that she was, by their own admission, she was entitled to the highest and she didn't get the highest. And they claim that it's not a frequent flyer program. We never had the opportunity to discover and to determine whether or not that's true. I guess as this court ruled in public health equipment and supply company, where it reversed dismissal based on a statute of frauds and reversed the district court's denial of the plaintiff's motion to file an amendment here, as there the district court wrongly assumed that the contract in issue was not written. We don't know that. The court wrongly assumed that this contract was for a period of more than one year. We don't know that. The distinct possibility exists, and we actually alleged that this contract could have been satisfied, disagreement, in less than a year. Because at the time of the fact, at the time that the promise was made in 1997, it was less than a year. Now, as I read the statute in Texas, and everybody on this panel is a lot more Texan than me, but as I read it, it says that it begins from the time that the promise, that the offer is made. And as I understand contracts, there's nothing to prohibit past performance from being part of the consideration for future completion of the agreement. And that's the case that we have here if you read the petition in the way that is most favorable to the plaintiff. Now, we have a second point. Even if the court were to assume that the statute of frauds would apply, there are exceptions. And we believe that what was alleged in the motion to dismiss, that there's a doctrine of partial performance, and that she, and by their own admission, did in fact make performance. The question of whether or not it was exclusively tied to the agreement, well, the court assumed that it might not have been. But I think in reviewing the pleadings, the court should have equally assumed that it might have been, under the facts in which we allege the opportunity to have a lifetime provision. Finally, in the few seconds that I have left, I appeal to this court to allow us to have an amendment. We've asked for it twice. Now, it's very true that we did not attach the actual proposed amended petition. But this court has never ruled that that is fatal. Quite the opposite. But what this court has recognized is what has occurred here. One, there's many questions about what has occurred. And if you assume it in the way most favorable to the plaintiff, there should be discovery. Two, this was our first request for our amendment, which I believe, in the EPCO case, the U.S. versus Cardinal Health, the court has interpreted liberally and recognized in public health equipment and supply that the first amendment does make a difference. I'm out of time. Well, you've saved time for about a minute. Yes, thank you. Mr. Birch? Good morning, Your Honors. May it please the court. My name is Alexander Birch, and I represent United Airlines, the appellee in this appeal, and the defendant in the district court below. This appeal is about whether a district court has the power to dismiss a case prior to discovery by its review of the pleadings and the straightforward application of Texas law and common sense. The rule of law sought to be enforced in this appeal is that in Texas, an implied contract is subject to this Texas statute of frauds. In this case, the district court granted United Rule 12b-6 motion to dismiss, which was asserted on the ground that plaintiff's implied contract claims were barred by the Texas statute of frauds. That statute of frauds provision generally provides that an agreement that cannot be performed within one year is unenforceable. If the first attorney in this matter misspoke in the complaint by calling this an implied contract when, in fact, it's something else, why shouldn't there be at least one opportunity to amend? If that were the allegation in the district court, she should be allowed an opportunity to amend. But in the district court, and to better answer that question, a clarification of the record is probably needed, but after filing the motion to dismiss and raising this issue, Miss Johnson had an opportunity to amend her pleading as a matter of right under Rule 15 and chose not to. Instead, in response, the plaintiff said, no, Texas law does not apply. They raise a choice of law issue. And then secondarily, they say, well, our promissory estoppel claim that we've pled prevents application of the statute of frauds. That's the two arguments made in response to the motion to dismiss. Then they make a bare assertion or a bare request, may I amend my pleading, without informing the court what amendment could remove her claim from the statute of fraud. If it were a simple mistake, that could have been said in the district court. That's not what was said. It was a tactical decision not to say that. Instead, recognizing the statute of frauds applied, the plaintiff went through and identified several exceptions or attempted to show that several exceptions would apply, and I will address those shortly. This court should affirm the district court's judgment for three reasons. First, as a matter of law, an implied contract is an unwritten contract. Our reference in our brief and our characterization of the alleged contract as oral is incorrect. She alleged an implied contract. Second, plaintiff could not fly 50,000 miles for five years in less than one year. And third, an amendment of plaintiff's pleadings. She could not what? She could not fly 50,000 miles for five years within one year. But if she'd already done all the other and then she got the letter and she could do 50,000 in one year, doesn't that make it? I understand the argument, Judge Elrod, but that contradicts the plaintiff's own pleading, that argument, and it wasn't made in the motion to dismiss phase. How does it directly contradict the pleading? Yes, I can direct this. How does it contradict? It contradicts the pleading in the sense that in paragraph 10 of the petition, she states, in reliance on the promise of defendant. So what was that promise? The promise was to award her the highest elite. The alleged promise was to award her the highest elite status for life. That's the promise. In reliance on that promise, plaintiff flew a minimum of 50,000 miles for five years. Right. That's not contradictory to what I just said. It just doesn't add the extra sentence, and she had already done the four-fifths of it before she got the notice. But she couldn't have relied on the promise to fly 50,000 miles for five years. If what you're saying is changing the facts of her petition, then that is what Ms. Johnson is attempting to do, which, again, was not raised in the motion to dismiss papers. I'm sorry. I don't understand what's inconsistent about that approach to this approach. Can you help me? Yes. I'm not trying to be difficult. No, no. I'm trying to articulate that the best I can. If the plaintiff's allegation is that she relies on a certain promise, and in reliance on that promise, she then flew 50,000 miles for five years, that's the allegation in the petition. Now, on appeal, we have the argument that, no, the offer was made sometime in 1997. None of these facts are in the record. Somehow the promise was made in 1997, and she was able to fulfill it by 1998 because she had previously already flown 50,000 miles, and that United credited her those four years. No. In addition, the company also reiterated it at that time. There was an original promise, and then the court, and then the company said, you're almost there, and you just need this. Am I wrong on that? You're not wrong on that, Judge Elrod, but that's not what she's alleging in her petition under paragraph 10. We may just read it differently, but if she's saying that she's flying in reliance on a certain promise, and then she flies 50,000 miles for five years, that precludes the initial argument saying, well, no, I only had to rely on that promise for one year to satisfy the contract. I'm not sure if that answers the question. If the letter to the opposition to the motion dismissed satisfied the requirement for a memorandum, shouldn't she be allowed to amend her complaint? Two answers to that. First of all, the answer is no. One, that letter doesn't satisfy the alleged conditions that are stated to form the contract. Second, there is no ratification exception to the statute of frauds. But it's not a ratification. It's a performance. You only need 50,000. It's not ratification. So are you asking if the letter said if you now fly just 50,000 miles for one year, we'll fulfill that promise? If that's what that letter says that was attached, we'd have a different case, and that very well could satisfy the statute of frauds because it could be performable potentially in less than one year. But that's not what the letter at issue here says. The letter at issue here simply says that it recognizes that her prior status with Continental was one thing. And then when she came to United, they recognized that prior status is equal to now the Premier 1K status she is currently enjoying. For life. For life. That's correct. So, I mean, it's a very nice letter. It's real professionalism on the part of United Airlines. So the question really in the lawsuit, when you get all, if you go through and dot your I's and cross your G's, and that may be a problem. The real only question is, is that global status, forget what it's called, global something. Global services. Services. Is that a higher status? That's sort of what the case comes down to. The airline has acknowledged, well, apparently at one point. Now, you may be speaking on behalf of the airlines and says, yes, but when she filed this lawsuit, we revoked. But assuming you're not saying that and United is going to stick by what it said, there's a very narrow question here. Which is, what is this global status for services? That's correct. That is a very narrow question. Is there a distinction? What are the additional services that are alleged that she is being deprived of? That is a question that ought to be able to be easily answered without all this litigation and all this expense. On the part of United Airlines, too. Why can't that just be answered? Well, and we could, and if this court were so inclined to reverse the district court's judgment, then we would have a ground for summary judgment. We would move for summary judgment. Because as the Seventh Circuit held, assuming the mileage plus program is the basis of her breach of contract, which we can't assume that from this record because she alleged an implied contract, not a written contract or a mileage plus contract or anything like that. If that were the basis of the lawsuit, we would have a summary judgment motion as the Seventh Circuit held in Lagan, which was referenced by opposing counsel. That there is no remedy for breach of contract under the mileage plus program because that program, the program rules, allow United Airlines to unilaterally change the program without notice. So what I think is going on is perhaps the complaint is that some sort of erroneous promotions were provided or some unscrupulous, deceptive trade practice and that we should have a remedy because that's not fair to someone who receives that promise. But at the state of play at the moment, anyway, United has not revoked what her frequent flyer status is. She's still got the card and she's still premier. She's a premier 1K member. Premier 1K member. We're all happy with that. For life. Except she wants for life and she just wants to be one notch higher and your answer is not entitled. Yes, that's correct. But you might not be correct. While in general you can revoke unilaterally, once Ms. Patricia Rowness, or however you say it, wrote this letter that said you will retain for life on the company letterhead providing for the, on behalf of the CEO of the company, that may be some, the CEO may have authority to bind the company over and above. So that letter itself may create that. You're exactly right, Judge Elrod. That letter in itself could pose a problem down the road in the event. You may not get summary judgment so quickly like you said. Perhaps. If the claim was that, if the claim was, which is not the claim here, if the claim was that United unilaterally revoked my premier 1K membership, then you'd have a new claim potentially based on that letter. You have something in writing. You don't have a statutes of frauds issue. We're not before the court on this record. It's a different record. It's a different case. Shouldn't it go back and let the court play it out? I disagree that it should go back. It should definitely not go back. There's no reason to send these, the litigants back and engage in discovery when the plaintiff made a tactical decision to sue based on an implied contract. Did not inform the court that it was a mistake, and she could have done that. She didn't do that. She asserted exceptions, limited exceptions to the statute of frauds, none of which apply, and that was just a tactical decision. Now, on appeal, and admittedly in the motion for a new trial, the new facts came out or the alleged new facts. Hey, no, we have these new arguments that the judge did not need to consider, none of which would have gave Judge Gilmore grounds under Rule 60B to allow for a motion to retry the case or to reinstate the case. Let me continue on where I was before. And just, again, I would like to clarify the record, if I could in this case, the procedural posture of this case, because it is important to where we are today and to how this case has been presented to the court for decision. As I stated before, in the plaintiff's response, after United filed its motion, the plaintiff generally argued that Illinois, not Texas, law applied. That if Texas law applied, then promissory estoppel, or their promissory estoppel claim, prevented application of the statute of frauds. United replied, and then plaintiff filed a surreply adding two additional grounds, the partial performance exception and a contingency exception. After United's response, the judge granted United's 12B6 motion. Under those circumstances, the record is set in terms of this court ruling on whether or not the judge abused her discretion in dismissing this case based on the plaintiff's pleadings of an implied contract that cannot be performed within one year. It cannot be reasonably argued that an implied contract is a written contract. Quite the opposite. As the U.S. Supreme Court recognized in Hercules v. U.S., implied contracts are inferred from conduct of the parties in light of the surrounding circumstances. The Texas Supreme Court says the same thing. Hawes and Garrett v. Gorbett Brothers. Inferred from surrounding circumstances. And importantly, the court notes that inferred from surrounding circumstances from expressions other than words. Without words, it cannot be written. So now you have the first element of the statute of frauds. I'm not sure it applies to this case, but you could have a written contract signed by both sides that has some implied terms. Sale of good contracts, for example, where the Texas Business and Commerce Code actually statutorily implies certain – allows courts to imply certain provisions. That's not this case, as you mentioned, Judge Smith. What we're talking about is the entire contract is inferred, not just terms or conditions of a written agreement or how you construe the words of a written agreement to imply a different or additional responsibilities under that written agreement. What's really difficult about this case is that while the case is still pending before the district court, a document comes into existence by the company at the highest level, which takes it out of the statute of frauds. I disagree that – Regardless of whether the technical defect exists in the – that's why this case is difficult. I understand, and in looking at that letter, and I urge the court to look at that letter, number one, I guess from an initial standpoint, the district judge couldn't properly consider that letter because it was not referred to in the pleadings. The letter is from 2013, and as opposing counsel stated, the promise occurred sometime in 1997. So that's not the written contract referred to in the pleading or the implied contract that's referred to in the pleading. But it can be an admission by United. An admission – this goes to ratification. Whether or not there is a ratification, a subsequent ratification of an unenforceable contract doesn't somehow make the original contract enforceable. If it's a new contract, if it were new terms and conditions, as Judge L. Rodwe discussed, if for some reason United were to cancel the Premier 1K membership, maybe there's a problem and there's no statute of frauds argument that could be asserted against that claim. But that's not this case. This case is an implied contract claim that cannot be performed – that the performance of the – the terms of performance cannot be completed within one year. It's physically impossible to fly 50,000 miles five years in a row within one year. That's the matter of common sense that I alluded to earlier. As for allowing the defendant – or excuse me, the plaintiff to amend, this court in McKinney and Irving Independent School District – and I'm just going to quote it because it applies directly here. Where a plaintiff fails to amend their complaint as a matter of right, fails to furnish the district court with the proposed amended complaint, and fails to alert both the court and defendants the substance of their proposed amendment, the plaintiff's request to amend, her pleading is properly denied. So under those circumstances, that is what – that is exactly what happened here. This is an abuse of discretion now when you talk about a motion to amend your pleading. It's – you're no longer in the de novo review under Rule 12b-6. You're looking at an abuse of discretion by the district court. Under those circumstances, the Fifth Circuit has made clear that that is not an abuse of discretion, which is what we have here. It's been a long morning, and I would like to yield the rest of my time. All right. Thank you. Mr. Rodney, you've saved time for rebuttal. Yes, Your Honor. Thank you so much. I'd like to point out, which I'm sure the court has already observed, that the majority of cases that are cited by United in the brief are cases of summary judgment. In some cases, they are cases of trial. All we're trying to do here is to move forward with a second amended – a first amended complaint. We disagree on a lot of things, obviously. We disagree as to what's the meaning of the letter. We disagree as to the application of the statute of frauds. I'm not here to suggest that we disagree as to the difference between Chicago law and Illinois law and Texas law. We're not. Almost any statute of fraud allegation will require the same thing, that the burden is on them to establish it. And our simple proposition is that by looking at this particular petition de novo, you cannot establish it unless you do something that you are not to do in the consideration of a motion for 12b-6, which is to view it in a way detrimental to the plaintiff. And that's exactly what happened. And so when you get to the amendment, which we agree is an abuse of discretion standard, the defendants point out that the court simply assumed that these were some – or used common sense to show that these were reasons why the plaintiff may have, in fact, taken so many flights on United Airlines for other reasons other than to meet the terms and conditions of the agreement. Well, I don't think that that is interpreting the agreement in a way that is most favorable to the plaintiff. And so therefore, even under the abuse of discretion standard, the case should be remanded for the opportunity for an amendment, which I believe, Judge King is right, will greatly clarify exactly what's going on here. You know, this case, your client is still flying Premier whatever on United, right? Yes, ma'am. You can't get a ticket Premier United, trust me, if their computers are not programmed to give her that kind of status. So she's in fine fettle, and the only question is whether or not she's got one notch up, entitled to one notch up or not. And at the rate we're going, we're going to spend a lot of money of legal fees on both sides here when the question that's at issue is very narrow. You know, Judge, I hear you loud and clear, but I haven't heard anything from United that could help us to resolve the issue amongst us. I hope that the district court would allow us the opportunity to explain it. But I think Judge Elrod is right that this is not so quickly motioned for summary judgment. In fact, I will tell you this. If you look at that Lagan case out of Illinois, in this case, there's a really serious issue as to if United was so confident of that position, we would be at summary judgment. We would have had those documents as they did in Lagan attached to their motion to dismiss. I mean, they complain about the court looking at documents, the letter that we submitted that came in late, although we had only one. This was our only opportunity to get it in there since the court did not act upon our motion to amend prior to deciding the motion to dismiss. So we attached it. But in the Lagan case, they attached all of the contracts to their motion to dismiss. I suspect, and I only suspect, that there might be a difference in the way in which those contracts were written in 1997 and the way in which they were written in 2013. And that's what we want to be able to get to. Now, we disagree with them as to what the meaning of the letter is. We believe that it does, in fact, prove that there was performance, that it does, in fact, establish an exception. And as to the amendment itself, we cited a case, Gonzales v. Kate, for the proposition that we think that does factual plausibility exist? And I think if you look at this case and you just put the petition on your desk and you think about all of the ways in which we might be able to make a case, many of which you've thought of here today, it's clear that we should have the opportunity to go forward and to get this resolved and that the court was premature in dismissing it. Thank you very much for having us, and it's good to see you. Thank you. Thank you, Mr. Rodney. Your case and all of today's cases are under submission. The court is in recess until 9 o'clock tomorrow.